INTERSTATE LUMBER CO., Respondent, *v.* RIDER et al., Defendants; HOME BUILDING & LOAN ASSN., Appellant.

(No. 7,001.)

(Submitted January 31, 1933.   Decided February 28, 1933.)]

[19 Pac. (2d) 644.]

*Mr. J. Miller Smith, Mr. Paul W. Smith* and *Mr. David R. Smith,* for Appellant, submitted a brief; *Mr. Paul W. Smith* argued the cause orally.

*Messrs. Smith, Mahan & Smith,* for Respondent, submitted a brief; *Mr. John W. Mahan* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

This is an appeal from a judgment in favor of the Interstate Lumber Company and against M. D. Rider for materials furnished him, at his special instance and request, of the reasonable value of $278.26, with interest, costs and attorney's fee, and decree of foreclosure of a materialman's lien upon the house for the repair of which the materials were used, as against both Rider and the Home Building & Loan Association, holding two mortgages on the premises.

There is no conflict in the evidence adduced before the court, sitting without a jury. In 1928, Rider was the owner of a lot in the city of Helena on which stood a dwelling-house in a dilapidated condition, which building he desired to render rentable. On June 19 of that year he borrowed $450 from the

Building & Loan Association, for the repayment of which he gave it a first mortgage on the premises; this mortgage was duly recorded. Between the dates August 14 and December 4, 1928, Rider purchased from the Lumber Company lumber, shingles, nails, cement, plaster and other materials for use in repairing the building. While the work was in progress and materials were being delivered, Rider borrowed an additional $200 from the Building & Loan Association, and gave a second mortgage on the premises. No part of the bill for material was ever paid, and in November, 1930, the Lumber Company commenced action to recover on the open account and to foreclose a materialman's lien, which the complaint alleges was duly filed with the clerk of Lewis and Clark county on February 16, 1929. A copy of the lien is attached to the complaint and made a part thereof by reference.

The court found for the plaintiff on all points raised, and decreed the sale of the house, with the right in the purchaser to remove it from the lot, unless the owner or the mortgagee redeem from the sale within the legal period of redemption, thus holding the mechanic's or materialman's lien subsequent to the first mortgage on the premises in so far as the lot is affected, but prior in right to the mortgage so far as the house is concerned.

1. The first attack made on the judgment is that the plaintiff failed to prove its lien by the introduction of the original or a certified copy thereof.

This technical objection is without merit. The trial was to the court, sitting without a jury, and the lien was brought to the attention of the court in the following informal manner: The copy of the lien, attached to the complaint, was before the court when counsel for plaintiff said, "I don't know whether there is an admission in here that we filed this mechanic's lien or not." Thereupon the court interrogated counsel for each defendant as to the matter, and each admitted in open court that the lien "was properly filed."

The defendants do not contend that the copy is not a true copy of the lien so filed, and no question is raised as to the

sufficiency of the lien to comply with the law. Under the circumstances, the proof is sufficient to warrant the finding sustaining the lien.

2. The only remaining question meriting consideration is as ▇▇▇ to whether or not the law gives the lien preference over the first mortgage on the premises and justifies the court's order of sale carrying the right to remove the house from the mortgaged lot.

Section 8342, Revised Codes of 1921, declares that "the liens for * * * material furnished * * * shall be prior to and have precedence over any mortgage * * * made subsequent to the commencement of work on any contract for the erection" of a building, structure, or improvement; while section 8344 provides that "the liens attach to the buildings, structures, or improvements" for which materials are furnished, "in preference to any prior * * * mortgage upon the land upon which said buildings, structures, or improvements are erected; and any person enforcing such lien may sell the same under execution, and the purchaser may remove the property sold within a reasonable time thereafter."

The statute is remedial in its nature, and, to effectuate the purpose of its enactment, should be given a liberal construction. (*Rogers-Templeton Lumber Co.* v. *Welch*, 63 Mont. 287, 208 Pac. 600.) The liberal construction of a statute does not, however, warrant this court in extending the operation of a statute beyond the plain import of the language employed, as the supreme court is not a law-making body and cannot supply provisions in a statute which the legislature did not incorporate therein. (*State ex rel. Koefod* v. *Board of County Commrs. of Hill County*, 56 Mont. 355, 185 Pac. 147.)

The lien extends primarily to the "building, structure or improvement" into which the material furnished went (*Louis* v. *Theatorium Co.*, 69 Mont. 50, 222 Pac. 1062), which is in the nature of a fund to which the lien claimant may resort without regard to the personal liability or responsibility of the person with whom he deals. (*Holden* v. *Mensinger*, 175 Cal. 300, 165 Pac. 950.) If the owner of unencumbered land builds

upon it, the lien for material purchased for that purpose and which went into the improvement attaches also to the land or a part thereof. (Sec. 8342, Rev. Codes 1921; *Pittsburgh Plate Glass Co.* v. *Culbertson Hotel Co.,* 62 Mont. 605, 205 Pac. 957.)

The lien, however, is primarily on the *improvement* into which the material goes; the title to the land is immaterial. Therefore, if the person contracting the debt for labor and material is legally in possession, but is not the owner of the land, the lien against a structure erected may be foreclosed and the purchaser at foreclosure sale may remove the structure from the land (*Morrow* v. *Dahl,* 66 Mont. 251, 213 Pac. 602; *Bartholomew* v. *James,* 76 Mont. 359, 246 Pac. 771; *Wyman* v. *Hall,* 84 Mont. 571, 276 Pac. 944), and the removal may be effected whether that action does or does not result in injury to the land. (*Stritzel-Spaberg Lumber Co.* v. *Edwards,* 50 Mont. 49, 144 Pac. 772.)

The syllabus to *Morrow* v. *Dahl,* above, refers to the lien of one who furnishes material to be used in "the erection or remodeling," but that reference is based upon the fact that Dahl moved a house to the land in question and thereafter re-modeled it, which action constituted the house an independent improvement on the land.

One asserting a lien must show that he is within the class entitled thereto under the applicable statute. (*Billings* v. *Missoula White Pine Sash Co.,* 88 Mont. 322, 292 Pac. 714.)

When land is mortgaged at the time of the erection of a building or other improvement thereon, it is clear that the rule respecting the erection on land not owned by the person making the improvement applies; in such a case the lien attaches to the building or improvement only, and, on foreclosure sale, the purchaser has the right to remove the building from the land—it having been wholly constructed after the mortgage was given—as "there is preserved to the mortgagee all that his mortgage covered when the same was given." (*Grand Opera House Co.* v. *Maguire,* 14 Mont. 558, 37 Pac. 607, 610.)

In the instant case, however, the prior mortgage covered not only the lot described, but the house which was thereafter repaired or remodeled.

The divergence in wording between sections 8342 and 8344, above, is significant; under the first, the lien takes precedence over "any mortgage * * * made subsequent to the commencement of work," while the second provides that the "liens attach to the buildings, structures, or improvements * * * in preference to any prior * * * mortgage upon the *land*," thus providing for a severance of a building erected on mortgaged land from the land, leaving the mortgagee "all that his mortgage covered when the same was given."

While the repair or remodeling of an old building certainly █ *improves* it, the term "improvements" has a well-defined and well-understood meaning when used in connection with real estate; it is "a valuable addition or betterment, as a bulding, clearing, drain, fence etc., on land." (Webster's New Int. Dictionary.) The term is defined in the title relating to revenue as including "all buildings, structures, fixtures, fences, and improvements erected upon or affixed to the land" (sec. 1996, Rev. Codes 1921), and, as used in the lien statute, the terms "buildings, structures or improvements" "agree in meaning but differ slightly in application." (*Barnes* v. *Montana Lumber Co.*, 67 Mont. 481, 216 Pac. 335, 336.) The term "improvement" is used, therefore, in the sense of an addition to the property, rather than in the restricted sense of improvement by repair of a building, which itself is but an "improvement" on the land.

Undoubtedly, when the owner of unencumbered property █ repairs or remodels his house, one who furnished material for the purpose, and which becomes a part of the structure, has a lien on the house so improved and also on the land, to the extent prescribed by the statute, but if, at the time the improvement is commenced, the premises are covered by a mortgage, the rights of a third person must be considered.

The recorded mortgage gives to the materialman constructive notice of the existence of the lien, and he deals with the

owner with knowledge that the house, as well as the land, is pledged as security for the payment of the mortgage debt. The general rule is that a mortgage, of record at the time work is commenced on any improvement on the mortgaged premises, takes precedence over all liens for materials furnished for the making of the improvement. (Bender-Moss, Law of Mechanics' Liens, 458.) Our statute relaxes this rule only to the extent of giving such a lien precedence over the mortgage, in so far as buildings, structures, or other improvements "erected" on the mortgaged land are concerned. This type of statute gives the lien superiority over a prior mortgage "to the extent of the increased value of the property resulting from the improvement placed thereon." (18 R. C. L. 957.) The justice of such a provision, so long as there is preserved to the mortgagee all that his mortgage originally covered, is demonstrated by what is said in *Grand Opera House Co.* v. *Maguire*, above. The test of preference, under this type of statute, is whether there is a distinct and independent improvement erected on the premises or merely repairs, extension or remodeling of an existing building or structure; if the first, the lien has preference; if the second, the priority of the mortgage lien continues unimpaired. (40 C. J. 304, and cases cited.)

The intention of the lawmakers is plain; it is to give to the subsequent lienor a distinct remedy for an independent improvement, or what amounts to an independent and separable improvement, without impairing "the obligation of the prior mortgage or the remedy of the mortgagee." (*Imboden* v. *Citizens' Bank*, 163 Ark. 615, 260 S. W. 734, 735; *Fletcher* v. *Kelly*, 88 Iowa, 475, 55 N. W. 474, 21 L. R. A. 347; *James River Lumber Co.* v. *Danner*, 3 N. D. 470, 57 N. W. 343; *Preston* v. *Sonora Lodge*, 39 Cal. 116; *Schulenburg* v. *Hayden*, 146 Mo. 583, 48 S. W. 472. See, also, *Johnson* v. *Puritan Min. Co.*, 19 Mont. 30, 47 Pac. 337.)

This interpretation of the statute gives preference to the lienor only with reference to additions to the property which would otherwise become a part of the freehold and subject to

the mortgage, but does not deprive the mortgagee of anything which was covered by his mortgage when it was given. An attempt to go further and subject the mortgaged property itself to the lien has been held unconstitutional, the court saying: "It is no more in the power of the legislature to pass a law taking from a man, without his consent, and without process of law, property which he may thereafter acquire, than it is to pass a law depriving him of property which he had acquired before its passage." (*Meyer* v. *Berlandi*, 39 Minn. 438, 40 N. W. 513, 517, 12 Am. St. Rep. 663, 1 L. R. A. 777.)

It may be that, if the remodeling consists of an addition to the existing building which can be removed without material damage to the original building, thus leaving to the mortgagee that which was originally covered by his mortgage, the lien may attach to such "improvement," and, on foreclosure of the lien, the purchaser at the foreclosure sale may remove the improvement from the premises within the time allowed. (*Imboden* v. *Citizens' Bank,* above.) However, where, as here, the material furnished was intended for use, and used, in such manner as to become an integral part of an existing structure, on which there existed a mortgage before the material was furnished, no lien can be enforced by the sale and removal of the building improved, for such action would take from the mortgagee a part (here perhaps the major portion) of the security given for the repayment of money loaned in good faith.

The court properly entered a personal judgment against the defendant M. D. Rider and decreed the foreclosure of the materialman's lien against his equity in the premises, and, with equal propriety, decreed the foreclosure of the lien as to the second mortgage on the premises, as the lien takes precedence over that mortgage by virtue of the provisions of section 8342, above, but, as the rights of the subsequent lienor cannot affect the property on which the first mortgage was given as it existed at the time the mortgage was executed and recorded, the court erred in ordering the property sold, with the right in the purchaser to remove the building from the lot. The property

may be sold in satisfaction of the lien, but only subject to the first mortgage and without the right in the purchaser to interfere with the rights of the defendant Building & Loan Association, under the first mortgage lien, in any manner.

The cause is remanded to the district court of Lewis and Clark county, with direction to modify the judgment and decree in conformity with this opinion. The defendant Home Building & Loan Association shall have its costs of appeal.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES ANGSTMAN, STEWART and ANDERSON concur.