DA 09-0211

## IN THE SUPREME COURT OF THE STATE OF MONTANA

### 2009 MT 365

SIGNAL PERFECTION, LTD, d/b/a SPL INTEGRATED
SOLUTIONS, BIG SKY COMMUNICATION & CABLE,
INC., TREASURE STATE ELECTRICAL CONTRACTING,
INC., and MANKIN CONSTRUCTION, INC.,

        Plaintiffs and Appellees,

   v.

ROCKY MOUNTAIN BANK - BILLINGS,

        Defendant and Appellant.

APPEAL FROM:     District Court of the Thirteenth Judicial District,
                       In and For the County of Yellowstone, Cause No. DV 06-0438
                       Honorable G. Todd Baugh, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Jeffrey T. Dickson; Christian, Samson & Jones, PLLC;
                Missoula, Montana

        For Appellees:

                Timothy A. Filz; Ragain Christensen, Fulton & Filz, PLLC;
                Billings, Montana (for Mankin Construction, Inc.)

                W. Scott Green; Patten, Peterman, Bekkedahl & Green, PLLC;
                Billings, Montana (for Big Sky Communication & Cable, Inc.)

                Rodd A. Hamman; Calton, Hamman & Wolff, P.C.; Billings, Montana
                (for Signal Perfection, LTD)

                Vicki L. McDonald; McDonald Law Firm, LLC; Billings, Montana
                (for Treasure State Electrical Contracting, Inc.)

                             Submitted on Briefs:  September 23, 2009

                                    Decided:  November 3, 2009

Filed:

               _____
                             Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1     Rocky Mountain Bank (RMB) appeals from orders of the District Court of the Thirteenth Judicial District, Yellowstone County, granting summary judgment to Signal Perfection LTD d/b/a SPL Integrated Solutions (SPL), Big Sky Communication and Cable Inc. (Big Sky), Treasure State Electrical Contracting Inc. (Treasure State), and Mankin Construction Inc. (Mankin) (collectively, "contractors").  We affirm.

¶2     We restate the sole issue on appeal:

¶3     Whether the contractors' construction liens have priority over RMB's trust indenture under § 71-3-542(4), MCA.

### FACTUAL AND PROCEDURAL BACKGROUND

¶4     In December 2004 Blackhawk Inc. (Blackhawk) took out a construction loan of approximately $5 million from RMB for the purpose of funding the construction of a casino and restaurant, the 12th Planet Entertainment Complex (12th Planet Complex), on property that it owned at 304 South 24th Street, Billings, Montana.  In addition to other security for the loan, RMB recorded a trust indenture on the property at 304 South 24th Street.  Thereafter, Blackhawk contracted with SPL to install audio and video systems in the 12th Planet Complex for approximately $1.4 million.  As SPL performed the contract, Blackhawk initially made payments corresponding to SPL's progress.  As of November 2005, however, Blackhawk stopped making scheduled payments.  Nevertheless, SPL continued its work at the 12th Planet Complex, and Blackhawk made no objections to the work performed.  Importantly, on November 15, 2005, Blackhawk withdrew the last of

2

the proceeds from the construction loan but apparently did not use them to pay SPL. In response to Blackhawk's non-payment, SPL filed a construction lien on March 23, 2006. SPL substantially completed its work later in March 2006, and subsequently, Blackhawk made one final, partial payment. After this payment, Blackhawk still owed SPL approximately $1 million. In April 2006 SPL filed an amended construction lien. Because Blackhawk failed to pay the remainder of its debt to SPL, SPL sued Blackhawk for breach of contract and to foreclose its construction lien. SPL also sought to have its construction lien adjudged to be prior and superior to any interest of RMB in Blackhawk's property at 304 South 24th Street. RMB answered, generally denying SPL's allegations and asserting that its trust indenture had priority over SPL's lien.

¶5 In October 2006 SPL moved for partial summary judgment, seeking, among other things, a ruling that its construction lien was superior to RMB's trust indenture. SPL argued for priority under § 71-3-542(4), MCA, because the trust indenture was taken to secure financing for the construction of the 12th Planet Complex. RMB opposed SPL's motion, arguing first that under § 71-3-542(3), MCA, the priority of SPL's construction lien was limited to the value of those items that could be severed from the 12th Planet Complex without harming the rest of the property. Second, RMB argued that SPL's construction lien was not entitled to priority under § 71-3-542(4), MCA, because SPL continued work after RMB made its final loan distribution to Blackhawk. The District Court rejected RMB's arguments and granted summary judgment to SPL, ruling that under § 71-3-542(4), MCA, SPL's construction lien had priority over RMB's trust

3

indenture because the trust indenture was taken to secure the construction loan made for the purpose of paying for the improvements liened—the construction of the 12th Planet Complex.

¶6      In June 2008 RMB moved the District Court under Rule 59(g), M. R. Civ. P., to alter or amend its prior ruling on the question of priority.  In support of its motion, RMB first asserted that a portion of its construction loan to Blackhawk was used to repay existing debt that Blackhawk owed to RMB.  Consequently, RMB argued, that portion of the construction loan was not subject to § 71-3-542(4), MCA, and was entitled to priority over SPL's construction lien.  Second, RMB reasserted its argument that its trust indenture was entitled to priority over that amount of SPL's construction lien that was incurred after RMB distributed the last of the loan proceeds to Blackhawk on November 15, 2005.  SPL opposed this motion, contending that the motion was procedurally improper and unsustainable on the merits.  The District Court did not rule on the motion within the 60-day period provided by Rule 59(g), M. R. Civ. P., and the motion was deemed denied.

¶7      In the meantime, the District Court consolidated SPL's case with those of other contractors—Big Sky and Treasure State—who had filed construction liens against Blackhawk for services and materials provided for the construction of the 12th Planet Complex.  Mankin, who had also filed a construction lien against Blackhawk in relation to the 12th Planet Complex, subsequently appeared in the case.  Big Sky, Treasure State, and Mankin all moved for summary judgment, contending that their construction liens

4

had priority over RMB's trust indenture on the basis of SPL's arguments and the District Court's prior grant of summary judgment to SPL. RMB opposed these motions, reasserting the arguments it made in opposition to SPL's motion for summary judgment and the additional argument it raised in its Rule 59(g), M. R. Civ. P., motion to alter or amend. The District Court granted summary judgment to Big Sky and Treasure State, ruling that their construction liens were superior to RMB's trust indenture. The District Court also issued a one-sentence judgment in favor of Mankin without addressing whether Mankin's construction lien was entitled to priority over RMB's trust indenture. Consequently, Mankin filed a motion under Rule 60(b)(6), M. R. Civ. P.—which RMB opposed—to amend the judgment to, among other things, give its construction lien priority over RMB's trust indenture. In early 2009 the District Court granted Mankin's motion.

¶8     After the District Court granted summary judgment to Big Sky and Treasure State, RMB filed another Rule 59(g), M. R. Civ. P., motion to amend and renewed its earlier motion to amend the grant of summary judgment to SPL. The District Court subsequently denied RMB's renewed motion to amend, reasoning that it had lost jurisdiction to address the issues when it failed to rule on RMB's initial motion to amend, which had raised the same issues, within the 60-day time period under Rule 59(g), M. R. Civ. P. RMB timely appealed.

**STANDARD OF REVIEW**

¶9    We review a district court's grant of summary judgment de novo, applying the same standard used by the district court under Rule 56, M. R. Civ. P. *Mattson v. Mont. Power Co.*, 2009 MT 286, ¶ 15, 352 Mont. 212, 215 P.3d 675. Under Rule 56(c), M. R. Civ. P., summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

¶10    We review a district court's interpretation of a statute for correctness. *Holm-Sutherland Co., Inc. v. Town of Shelby*, 1999 MT 150, ¶ 8, 295 Mont. 65, 982 P.2d 1053.

**DISCUSSION**

¶11    ***Whether the contractors' construction liens have priority over RMB's trust indenture under § 71-3-542(4), MCA.***

¶12    RMB argues that its trust indenture should receive priority over the contractors' construction liens in two respects. First, RMB contends that the portion of the trust indenture used to repay Blackhawk's preexisting debt should receive priority over the contractors' construction liens. Second, RMB asserts that its entire trust indenture should receive priority over the lien amounts for labor and materials provided after Blackhawk had exhausted its loan from RMB. We find no merit to either argument.

¶13    RMB did not present its first argument to the District Court when SPL initially moved for summary judgment, but only raised the argument later in its Rule 59(g),

6

M. R. Civ. P., motion to amend. We do not consider arguments that were not presented to the District Court, but raised for the first time on appeal. *State v. Wetzel*, 2005 MT 154, ¶ 13, 327 Mont. 413, 114 P.3d 269. Nor may a party use Rule 59, M. R. Civ. P., to "raise arguments which could have been raised prior to judgment or [to] give a litigant a second bite at the apple." *Hi-Tech Motors, Inc. v. Bombardier Motor Corp. of Am.*, 2005 MT 187, ¶ 34, 328 Mont. 66, 117 P.3d 159. Because RMB did not properly raise its first argument before the District Court, we decline to address it on appeal.

¶14 RMB contends that it did, in fact, raise its argument for partial priority of the portion of the trust indenture used to repay Blackhawk's preexisting debt in response to SPL's motion for partial summary judgment. This, however, is overstatement. While RMB did mention that a portion of the proceeds provided pursuant to the trust indenture "were used to pay off an existing debt Blackhawk owed to Rocky Mountain Bank," it did so only in the factual introduction of its brief. RMB did not present any analysis or argument based on these facts in the argument section of its brief. We do not address new legal theories on appeal because it "would be 'fundamentally unfair' to fault the District Court in not ruling on an issue never before presented." *Dayberry v. City of E. Helena*, 2003 MT 321, ¶ 24, 318 Mont. 301, 80 P.3d 1218. Here, it would be fundamentally unfair to fault the District Court for failing to discern a phantom argument that the facts of the case might have suggested, but which was not actually presented by either party.

7

¶15 To address RMB's second argument, we must consider and interpret the controlling statute, § 71-3-542, MCA. Section 71-3-542, MCA, provides this state's method for determining priority between construction liens and other encumbrances on property. Section 71-3-542(1), MCA, presents the default "first in time, first in right" rule: a construction lien has priority over encumbrances that attach to an improvement or the real property on which the improvement is located and that are filed after the construction lien has attached. Section 71-3-542(2), MCA, presents the converse application of the "first in time, first in right" rule: encumbrances on an improvement or real property that are filed prior to the attachment of a construction lien have priority over the construction lien. Exceptions to the application of § 71-3-542(2), MCA, are found in § 71-3-542(3), (4), MCA. Section 71-3-542(3), MCA, provides that a construction lien has priority, to the extent of the value of work performed or the value of the improvement, over a previously filed encumbrance if the improvement is severable. Section 71-3-542(4), MCA, which is directly at issue here, reads:

> A construction lien has priority over an interest, lien, mortgage, or encumbrance that is filed before the construction lien attaches if that interest, lien, mortgage, or encumbrance was taken to secure advances made for the purpose of paying for the particular real estate improvement to which the lien was attached.

¶16 When interpreting a statute, our objective is to ascertain the legislature's intent from "the plain meaning of the language" of the statute. *Contreras v. Fitzgerald*, 2002 MT 208, ¶ 14, 311 Mont. 257, 54 P.3d 983 (quoting *In re R.L.S.*, 1999 MT 34, ¶ 8, 293 Mont. 288, 977 P.2d 967). It is not our role to "insert what has been omitted or omit

8

what has been inserted." Section 1-2-101, MCA. "Where the language of a statute is clear and unambiguous, the statute speaks for itself and we will not resort to other means of interpretation." *Hilands Golf Club v. Ashmore*, 2002 MT 8, ¶ 20, 308 Mont. 111, 39 P.3d 697.

¶17 RMB proposes that the plain language of § 71-3-542(4), MCA, requires us to grant RMB's trust indenture priority over those amounts of the contractors' construction liens that are attributable to labor and materials provided after RMB had fully disbursed Blackhawk's loan proceeds. We find no support in § 71-3-542(4), MCA, or any other subsection of § 71-3-542, MCA, for this proposition. On the contrary, § 71-3-542, MCA, addresses encumbrances and construction liens. It does not discuss or provide any means of partitioning encumbrances or construction liens and then assigning priority among resultant parts. Nor is there any indication how such a procedure would operate. For these reasons and because construction liens are "remedial in nature, with [their] foundation in equity and natural justice," *Beck v. Hanson*, 180 Mont. 82, 87, 589 P.2d 141, 144 (1979), we decline to insert the nuances advocated by RMB into § 71-3-542(4), MCA. Instead, consistent with the plain language of the statute, we will consider each party's encumbrance—RMB's trust indenture and each contractor's construction lien—as a whole.

¶18 Here, it is undisputed that Blackhawk executed the trust indenture for the nonexclusive purpose of securing advances for the construction of the 12th Planet Complex. Nor is it disputed that the construction liens at issue attached to the 12th Planet

Complex, for which the contractors provided services and materials. Consequently, under a plain reading of § 71-3-542(4), MCA, the construction liens, in their entirety, have priority over the entirety of the trust indenture. Thus, the District Court correctly granted summary judgment to the contractors on the issue of the priority of their construction liens.

¶19 In opposition to this conclusion, RMB argues for priority with regard to lien amounts incurred after November 15, 2005, when RMB distributed the last of the construction loan proceeds to Blackhawk. After that date, RMB submits, the contractors were in a better position than RMB was to protect their interests. To support this argument, RMB cites *American Federal Savings & Loan Assn. v. Schenk*, 241 Mont. 177, 785 P.2d 1024 (1990). In *Schenk*, the landowner borrowed money from the lender to purchase a bar. 241 Mont. at 178, 785 P.2d at 1025. The lender secured the loan with a deed of trust on the bar property. *Schenk*, 241 Mont. at 178, 785 P.2d at 1025. Nearly a year later, and unbeknownst to the lender, the landowner contracted with the builder to remodel the bar. *Schenk*, 241 Mont. at 178, 180-81, 785 P.2d at 1025, 1027. Apparently, the landowner failed to pay for the remodeling, prompting the builder to file a mechanic's lien. *Schenk*, 241 Mont. at 178, 785 P.2d at 1025. The issue on appeal was whether the mechanic's lien had priority over the deed of trust. *Schenk*, 241 Mont. at 178, 785 P.2d at 1025. The Court, applying the rule that the party with the least ability to protect its financial interest has priority over other prior recorded encumbrances, held that the lender's deed of trust had priority. *Schenk*, 241 Mont. at 181, 785 P.2d at 1027. In

reaching this conclusion, the Court observed that prior cases showed that lenders could protect their financial interests in property from subsequent mechanic's liens by withholding funds requested for subsequent improvements or by requiring the landowner to obtain lien waivers from the builders. *Schenk*, 241 Mont. at 180, 785 P.2d at 1026 (citing *Home Interiors, Inc. v. Hendrickson*, 214 Mont. 194, 199, 692 P.2d 1229, 1232 (1984)). Distinguishing prior case law, the Court reasoned that the lender in *Schenk* could not have protected itself by withholding funds or obtaining lien waivers because it did not know and could not reasonably have known that the owner intended to remodel the bar. *Schenk*, 241 Mont. at 180-81, 785 P.2d at 1027. On the other hand, the Court explained, the builder could have protected itself by discovering the prior deed of trust, *Schenk*, 241 Mont. at 181, 785 P.2d at 1027, and then, presumably, refusing to remodel the bar.

¶20 We are unconvinced by RMB's argument. Initially, this argument rests on the proposition, which we here reject as unsupported by the language of the statute, that § 71-3-542, MCA, allows courts to parse encumbrances and then assign priority among the constituent parts. Moreover, *Schenk* is materially different from this case. Principally, in *Schenk*, the deed of trust was taken prior to the attachment of the mechanic's lien and was not taken to secure advances to finance the remodeling, but rather to purchase the property. 241 Mont. at 178, 180-81, 785 P.2d at 1025, 1027 (noting that loan was to purchase bar and that remodeling commenced subsequent to the loan). Thus, though the Court did not articulate it, the situation in *Schenk* was governed by § 71-3-542(2), MCA.

11

In contrast, here, RMC's trust indenture was taken to secure advances to finance the construction of the 12th Planet Complex, and, therefore, § 71-3-542(4), MCA, an exception to § 71-3-542(2), MCA, controls. Accordingly, this case is directly controlled by statute, and *Schenk* is inapposite. Furthermore, even if *Schenk* here, it would not justify giving RMB's trust indenture priority over the contractors' construction liens. In *Schenk* the Court considered whether the lender had the opportunity to protect itself at the time it loaned the funds to the landowner. 241 Mont. at 180-81, 785 P.2d at 1027. Because at the time it made the loan, the lender did not know and could not reasonably have known of the landowner's intention to remodel the bar, the Court reasoned, the lender did not have an opportunity to protect itself. 241 Mont. at 180-81, 785 P.2d at 1027. The opposite is the case here, where RMB loaned the proceeds to Blackhawk for the express purpose of constructing the 12th Planet Complex. At the time it made the loan, RMB had the opportunity to protect itself by either not making the loan or by conditioning it on Blackhawk's obtaining lien waivers from the contractors. Consequently, *Schenk* does not support granting partial priority to RMB.

¶21 Affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ MIKE McGRATH
/S/ PATRICIA O. COTTER
/S/ JIM RICE
/S/ BRIAN MORRIS

12